IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| DARYL LEWIS and DENISE LEWIS, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No.: 1:22-cv-01079-JDB-jay ) |
| SOUTHERN TRUST INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) ) ) |

ORDER DENYING MOTION TO EXCLUDE EXPERT TESTIMONY

Before the Court is the May 24, 2023, motion by Defendant, Southern Trust Insurance Company, to exclude Antonio Simpson, the expert witness of Plaintiffs, Daryl Lewis and Denise Lewis, pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure and Rule 702 of the Federal Rules of Evidence. (Docket Entry "D.E." 31.) Plaintiffs filed a response (D.E. 34) to which Defendant has replied. (D.E. 39.) A *Daubert* hearing is unnecessary given the comprehensive briefing on the issues.

**FACTUAL AND PROCEDURAL BACKGROUND**

On February 2, 2021, a fire severely damaged Plaintiffs' house, which was insured under a homeowners policy issued by Defendant. (D.E. 10 at PageID 79-80.) Shortly after the fire, the Lewises submitted a claim for loss to Southern Trust. (*Id.*) Defendant inspected the dwelling, adjusted the loss, and initially estimated that the cost to restore the dwelling to pre-loss condition was $122,642.65 at a replacement cost value and $97,320.81 at an actual cash value. (D.E. 34-1 at PageID 940.) Plaintiffs disagreed with this evaluation and hired First Call Claims, a public

adjusting firm, which inspected the property on March 25, 2021, and determined the replacement cost value to be $445,755.48. (D.E. 34-2 at PageID 941, 1009.) On September 27, 2021, Southern Trust completed its estimation and determined that the cost to restore the dwelling to its pre-loss condition was $190,804.93 at a replacement cost value, $140,715.54 at an actual cash value, and, applying the $1,500 deductible, issued payment to Plaintiffs for the dwelling of $139,215.54. (D.E. 10 at PageID 80-81; D.E. 34-3 at PageID 1054.)  The Lewises then hired Simpson, an insurance consultant and property adjuster with Omega Building Consultants.  (D.E. 34-4 at PageID 1055.)  The adjuster inspected the property on April 7, 2022, took pictures and performed a 3-D scan of the dwelling.  (*Id.* at PageID 1058.)   He then reviewed what he gathered from his inspection, Defendant's final estimate, First Call Claims's estimate, and concluded that the replacement cost value was $359,141.51, with the actual cash value being $318,057.92. (D.E. 34-6 at PageID 1127.)

On April 28, 2022, Plaintiffs brought a breach of contract claim in this court seeking to recover compensatory and punitive damages. (D.E. 1.)  Defendant timely answered (D.E. 8) and Plaintiffs filed an amended complaint (D.E. 10) adding a second claim under Tenn. Code Ann. § 56-7-105, which allows for a 25% penalty on insurers who act in bad faith and fail to pay a reimbursable loss within sixty days of a demand by the insured.  *See* Tenn. Code Ann. § 56-7-105(a).  Parties engaged in discovery and Plaintiffs listed Simpson as one of their Rule 26 experts. (D.E. 28; D.E. 31-3.)  Defendant then filed the present motion seeking to exclude any testimony of Simpson regarding his estimate of repair costs for dwelling damage and any opinion testimony on his estimate.  (D.E. 31.)

**STANDARD OF REVIEW**

A federal court must "decide any preliminary question about whether a witness is qualified . . . or evidence is admissible." Fed. R. Evid. 104(a). The proponent of expert testimony bears the burden of showing that the evidence is admissible. *Nelson v. Tenn. Gas Pipeline Co.*, 243 F.3d 244, 251 (2001) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 n.10 (1993)). "In *Daubert*, the Supreme Court held that the Federal Rules of Evidence, in particular Fed. R. Evid. 702 and 104(a), govern the admission of expert witness testimony and require that the trial judge 'ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable.'" *Id.* at 250 (quoting *Daubert*, 509 U.S. at 589). This "gatekeeping obligation" for the district court applies to both scientific knowledge and "testimony based on technical and other specialized knowledge." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999) (internal quotation marks omitted).

Federal Rule of Evidence 702 provides the standard for the admissibility of expert testimony:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Sixth Circuit has clarified that Rule 702 has three requirements: "First, the witness must be qualified by knowledge, skill, experience, training, or education. Second, the testimony must be relevant, meaning that it will assist the trier of fact to understand

the evidence or to determine a fact in issue. Third, the testimony must be reliable." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008) (internal quotations and citations omitted).

"To be reliable, the opinion must not have 'too great an analytical gap' between the expert's conclusion, on the one hand, and the data that allegedly supports it, on the other." *Lozar v. Birds Eye Foods, Inc.*, 529 F. App'x 527, 530 (6th Cir. 2013) (quoting *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 675-76 (6th Cir. 2010)). To assess reliability, district courts consider "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community . . . ." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593-94). These factors "can also apply in evaluating non-scientific fields that are 'technical' or 'specialized' in nature." *United States v. Mallory*, 902 F.3d 584, 593 (6th Cir. 2018) (quoting *Kumho*, 526 U.S. at 149-53). These factors are non-exclusive and "should be applied only 'where they are reasonable measures of the reliability of expert testimony.'" *In re Scrap Metal*, 527 F.3d at 529 (quoting *Gross v. Comm'r*, 272 F.3d 333, 339 (6th Cir. 2001)). Several factors may also cut against reliability including "reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)).

The reliability assessment is flexible and when nonscientific testimony is involved, the court may consider the expert's personal knowledge or experience, because "the factors enumerated in *Daubert* cannot readily be applied to measure the reliability of such testimony." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 295 (6th Cir. 2007). Ultimately,

4

"[t]he questions of what factors to apply and what conclusions to draw about an expert's reliability are entrusted to the district court's discretion." *Mallory*, 902 F.3d at 593; *see also Kumho*, 526 U.S. at 153 ("[W]hether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine."). Importantly, however, the court does not decide whether an opinion is correct, but only whether it "rests upon a reliable foundation, as opposed to . . . unsupported speculation" and, notably, "rejection of expert testimony is the exception, rather than the rule[.]" *In re Scrap Metal*, 527 F.3d at 529-30. Thus, "[a]ny weakness in the underlying factual basis goes to the weight of the evidence, not its admissibility." *SCF, LLC. v. Hartford Fire Ins. Co.*, No. 120CV01173JDBJAY, 2021 WL 6932658, at *3 (W.D. Tenn. Dec. 27, 2021) (citing *Daubert*, 509 U.S. at 596). "Accordingly, 'Rule 702 should be broadly interpreted on the basis of whether the use of expert testimony will assist the trier of fact.'" *U.S. ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land in Tenn.*, 821 F.3d 742, 749 (6th Cir. 2016) (quoting *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir.1998)).

## ANALYSIS

According to the expert report submitted with Plaintiffs' Rule 26 disclosures, Simpson's proposed testimony concerns his estimate, his opinion regarding the method and scope of repairs for the dwelling, and the data used to prepare his estimate. (D.E. 31-2 at PageID 299.) The parties do not dispute that Simpson is qualified and that his proposed testimony is relevant, however, they disagree as to whether his estimate and opinion fail to satisfy the reliability requirement of Fed. R. Evid. 702. (D.E. 31-1 at PageID 206-09; D.E. 34 at PageID 901-08; D.E. 39 at PageID 1342-44.)[1]

---

[1] In a footnote, Plaintiffs argue that Defendant's motion should be denied on the basis of

Thus, the Court will examine whether Simpson's proposed testimony is the product of reliable principles and methods, based on sufficient facts and data, and whether Simpson reliably applied such principles and methods to the facts of the case.

According to the expert's report, he has worked in insurance claims for over twelve years and during that time, has handled thousands of claims. (D.E. 34-4 at PageID 1056.) To prepare his estimate in this case, he performed a visual and physical inspection of the property during which he conducted a 3-D scan and took numerous photographs. (D.E. 34-4; D.E. 34-6 at PageID 1070.) Additionally, he reviewed all previous estimates and examined Defendant's photos of the damage taken just after the fire. (D.E. 34-4 at PageID 1060-61.) Relying on this information, he then used Xactimate, an estimating software that he claims is the "leading . . . in the insurance industry[,]" to prepare his final estimate. (*Id.*) Simpson asserts that he "used the same methods to create [this] estimate that [he] ha[s] used" throughout his career. (*Id.*)

Southern Trust contends that "Simpson's estimate and opinions regarding his estimate are not based on sufficient facts or data and are not the product of reliable methods" but are instead "too speculative to meet the reliability standard for opinion testimony." (D.E. 31-1 at PageID 206 (quoting *United States v. Lang*, 717 F. App'x 523, 535 (6th Cir. 2017).) Defendant relies on Simpson's deposition (D.E. 31-2 at PageID 211-89) and his estimate (*Id.* at PageID 301-67) to support its argument. (D.E. 31-1 at PageID 206-09.) In response, Plaintiffs aver that "Simpson's methodology, which was based on his extensive experience and detailed investigation, satisfies Rule 702 and *Daubert*" and that "[a]ny weaknesses in his methodology will affect the weight that

---

untimeliness. (D.E. 34 at PageID 892 n.1.) The Court will excuse Defendant's tardiness and address the merits of the argument.

his opinion is given at trial but not its threshold admissibility." (D.E. 34 at PageID 901 (quoting *Best*, 563 F.3d at 182).) In support, the Lewises rely on Simpson's declaration (D.E. 34-4), his CV (D.E. 34-5), his expert report and estimate (D.E. 34-6), Defendant's photos of the damaged property (D.E. 34-7), and the deposition of John Byrum, Plaintiffs' other Rule 26 expert (D.E. 34-8). (D.E. 34 at PageID 901-08.) Defendant's reply reasserts that Simpson's testimony should be excluded because his testimony lacks a reliable foundation. (D.E. 39 at PageID 1342.) Southern Trust points to Simpson's deposition and argues that he based his estimate on assumptions and that while he reviewed other estimates and photographs of the damage, "he never made any efforts to verify the accuracy of the information . . . ." (*Id.*) Southern Trust also contends that Plaintiffs' reference to Byrum's testimony should be disregarded for the purposes of determining the reliability of Simpson's proposed testimony. (*Id.* at PageID1344.)

To support its argument, Defendant specifically highlights several alleged improper assumptions, errors, and inconsistencies that Simpson made in his estimate. For example, Simpson testified that he assumed that there was "a skim coat" despite the house being "taken down all the way to the studs" (D.E. 31-2 at PageID 235-36), "soot damage" in the garage (*Id.* at PageID 252), "soot damage" in the shelter room (*Id.* at PageID 253), a "fiberglass shower" in the master bedroom (*Id.* at PageID 263-64), "standard unit" cabinets in the kitchen rather than "premium or custom-grade cabinetry" (*Id.* at PageID 265-66) and that the kitchen flooring was bamboo rather than pre-finished solid wood (*Id.* at PageID 267-68.) Furthermore, he testified that he failed to take "depreciation" out of the dwelling's vinyl siding (*Id.* at PageID 232), mistakenly included a "fiberglass shower unit in [a] half bath" (*Id.* at PageID 273), the selection of bamboo flooring instead of carpet in the living room was "an error" (*Id.* at PageID 275), and that he was unsure

7

whether the stairs and landing were carpeted or made of hardwood (*Id.* at PageID 277). Finally, he stated that he did not speak with anyone at First Call Claims before finalizing his estimate. (*Id.* at PageID 239.)

With this background, Defendant cites *United States v. L.E. Cooke Co., Inc.* for the proposition that when "an expert's testimony amounts to 'mere guess or speculation,' the court should exclude his testimony . . . ." (D.E. 31-1 at PageID 206; D.E. 39 at PageID 1343); *United States v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 342 (6th Cir. 1993) (quoting *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988)). The next clause of that citation is instructive: "but where the opinion has a reasonable factual basis, it should not be excluded." *L.E. Cooke Co.*, 991 F.2d at 342. In that case, the Sixth Circuit affirmed the district court's admission of expert testimony because the witness had a strong foundation for his opinion based in part on "his own lengthy experience in" the relevant field. *Id.* Southern Trust also cites *United States v. Lang* and *Lyngaas v. Ag* to support its argument that Simpson's opinion and estimate are too speculative to be admitted because they are based on inaccurate and unreliable data. (D.E. 31-1 at PageID 206; D.E. 39 at PageID 1343.) In *Lang*, the Sixth Circuit affirmed the district court's admission of expert testimony noting that "[s]ince *Daubert*, we have only ordered a district judge to exclude expert testimony twice." *Lang*, 717 F. App'x at 535 (citing *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 667-68 (6th Cir. 2010) and *Mike's Train House, Inc. v. Lionell, L.L.C.*, 472 F.3d 398, 407 (6th Cir. 2006)). In those cited cases, the proposed expert formed an opinion from "thin air" or without "scientific knowledge." *Id.* (internal quotation marks omitted). Likewise in *Lyngaas,* the Sixth Circuit affirmed the district court's finding that proposed witness testimony was unreliable because it was "premised entirely on unauthenticated" evidence and an irrelevant

affidavit. *Lyngaas v. Ag*, 992 F.3d 412, 431 (6th Cir. 2021).

These cases and the cited portions of Simpson's deposition provide weak support for excluding his opinion and testimony. His estimate and his assumptions made in developing it are the product of his years of experience in preparing estimates and his reliance upon facts in the record. He performed a physical inspection of the property on April 7th, 2022, took pictures, and conducted a 3-D scan of the dwelling. (D.E. 31-2 at PageID 224-25.) Simpson finalized his estimate on August 16th, 2022, and during the intervening four months, he reviewed the estimates prepared by First Call Claims and Defendant as well as Defendant's photographs of the property. (*Id.* at PageID 228-29.) Indeed, he testified repeatedly that he relied on this information to prepare each line item of his estimate. (*Id.* at PageID 236-38, 252-53, 259-63, 266-72, 277-80, 287-89.)

His estimate and opinion are thus not purely "subjective belief or unsupported speculation" but are supported by "good grounds, based on what is known." *Lyngaas*, 992 F.3d at 431 (quoting *Daubert*, 509 U.S. at 590). Despite his opinion being partly "based on assumed facts," he does "find some support for those assumptions in the record." *McLean v. 988011 Ontario, Ltd*, 224 F.3d 797, 801 (6th Cir. 2000) (citing *Shaw v. Stackhouse*, 920 F.2d 1135, 1142 (3d Cir. 1990)); *see also Universal Coin & Bullion, Ltd. v. Fed. Express Corp.*, No. 2:12-CV-2778-SHM-DKV, 2015 WL 12001264, at *5 (W.D. Tenn. June 30, 2015) ("If an expert basis his opinions on assumed facts, there must be some support for those assumptions in the record."). Furthermore, Simpson developed his estimate and opinion in part based on his "twelve years of experience in adjusting insurance claims" and his handling of "more than 5,000 first-party property insurance claims . . . ." (D.E. 34-4 at PageID 1056); *see SCF, LLC*, 2021 WL 6932658, at *3 (quoting *Surles ex rel. Johnson*, 474 F.3d at 295) ("When nonscientific expert testimony is involved, the court's analysis

9

may focus upon the expert's personal knowledge or experience because 'the factors enumerated in *Daubert* cannot readily be applied to measure the reliability of such testimony.'").

Although Simpson conducted his inspection of the property more than one year after the fire, failed to discuss First Call Claims's estimate with a representative of the company, and noted several potential errors in his own estimate, "mere 'weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility.'" *McLean*, 224 F.3d at 801 (quoting *L.E. Cooke Co.*, 991 F.2d at 342). Indeed, his "proffered testimony 'may very well be shaky,' [but] because the opinions were based upon facts in the record, and were not 'assumptions' or 'guesses,'" Defendant's arguments go to "the accuracy of the conclusions, not to the reliability of the testimony." *In re Scrap Metal*, 527 F.3d at 530 (quoting *Jahn v. Equine Servs.*, 233 F.3d 382 (6th Cir. 2000)). As the Supreme Court made clear, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (citing *Rock v. Arkansas*, 483 U.S. 44, 61 (1987)).

For the reasons set forth, Defendant's motion is hereby DENIED.

IT IS SO ORDERED this 20th day of July 2023.

s/ J. DANIEL BREEN<br>UNITED STATES DISTRICT JUDGE